UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: HERBERT C. HARPER

DEBTOR

CIVIL ACTION

NO. 26-229

SECTION "N"

CHAPTER 13

## ORDER AND REASONS

Before the Court is Appellant Lois Williams Gautier's Appeal in which she asks the Court to reverse the bankruptcy court's order sustaining an objection to her Proof of Claim No. 11 and denying her application for administrative priority claim.[1] Appellee and Chapter 13 debtor Herbert C. Harper opposes the appeal.[2] After careful consideration of the record, the parties' memoranda, and applicable law, the Court affirms the order of the bankruptcy court.

## BACKGROUND

This appeal arises from two rulings in an order the bankruptcy court entered following an evidentiary hearing on January 16, 2026: (1) sustaining Harper's objection to Gautier's proof of claim, and (2) denying Gautier's application for administrative priority.[3]

On June 27, 2024, Harper filed a voluntary petition under Chapter 13.[4] The petition followed years of contentious state-court litigation between Harper and his

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 12.
[3] Rec. Doc. 1; *see* Rec. Doc. 1-1.
[4] *In re Harper*, No. 24-11217 (Bankr. E.D. La, Jan. 16, 2026).

former wife over the partition of their community property.[5] In the course of that litigation, Harper brought a revocatory action concerning a transfer of immovable property to Gautier (his former wife's mother), which he alleged was a simulated sale intended to place assets beyond his reach.[6] To secure any proceeds of that transfer, Harper obtained a state-court order temporarily freezing Gautier's bank accounts.[7] That freeze was in effect for approximately six weeks in and around August 2024, after Harper had filed his bankruptcy petition.[8]

On September 4, 2024, Gautier filed Proof of Claim No. 11, seeking $165,000 from the Chapter 13 estate for damages she attributed to the account freeze.[9] She asserted that her claim was based on wrongful seizure, malicious prosecution, intentional infliction of emotional distress, and harm to her credit.[10] Harper objected, contending that Gautier had offered no evidentiary support for the claimed damages.[11] Separately, Gautier filed an application for administrative priority claim under 11 U.S.C. § 503(b), seeking payment of the attorney's fees she incurred in the state-court action and in pursuing her proof of claim.[12] Harper opposed the application.[13]

---

[5] *See* Rec. Doc. 7-3 at 4.

[6] *Id.*

[7] *See id.* at 11.

[8] Transcript of Hearing at 81:1-2, *In re Harper*, No. 24-11217, Dkt. No. 239 (hereinafter "Transcript of Hearing"); *see also* Rec. Doc. 7-3 at 23.

[9] Rec. Doc. 7-3 at 1.

[10] *Id.*

[11] *In re Harper*, No. 24-11217, Dkt. No. 116.

[12] *Id.*, Dkt. No. 136.

[13] *Id.*, Dkt. No. 161.

The bankruptcy court took up both matters at a January 16, 2026, hearing. Gautier testified; she presented the testimony of her treating physician, Cherie Bragg, M.D.; and the court admitted Gautier's Exhibits 4–6, 10, and 11 into evidence.[14] The court sustained the claim objection and denied the administrative priority application.[15]

As to the proof of claim, the court explained that a proof of claim is the vehicle for compensating *pre-petition* claims, whereas Gautier's asserted basis for recovery was the *post-petition* freezing of her accounts.[16] The proof of claim therefore was not the proper vehicle for seeking relief.[17]

As to administrative priority, the court applied *Reading Co. v. Brown*, 391 U.S. 471 (1968), as the governing framework, rejected Harper's argument that *Reading* has no application in Chapter 13, and inquired into (1) the wrongful nature of the debtor in possession's act and (2) whether the act was committed in the course of operating the estate.[18] The court found the second element satisfied but denied relief based on the first, concluding that the record contained no evidence that the account freeze was wrongful.[19] Gautier timely appealed.[20]

## STANDARD OF REVIEW

The Court has jurisdiction to hear bankruptcy appeals pursuant to 28 U.S.C. § 158(a)(1). In appeals from bankruptcy courts, this Court reviews conclusions of law

---

[14] Rec. Doc. 1-1.
[15] *Id.*
[16] Transcript of Hearing at 74:9-17.
[17] *Id.* at 74:17-19.
[18] *Id.* at 75:17-22; *id.* at 76:17-26.
[19] *Id.* at 81:19-25; *id.* at 82:14-15.
[20] Rec. Doc. 1.

de novo and findings of fact for clear error.[21] A finding of fact is clearly erroneous only where the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed.[22] A reviewing court's deference is at its greatest where a finding rests on the trial court's assessment of witness credibility, for the factfinder alone has seen and heard the witnesses. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly erroneous.[23] When an issue is a mixed question of law and fact, however, the standard of review often reflects which "judicial actor is better positioned" to make the decision.[24]

## LEGAL STANDARD & ANALYSIS

Section 507(a)(1) of the Bankruptcy Code provides that administrative expenses incurred in bankruptcy are given priority in distribution and are generally paid in full before other unsecured creditors.[25] Administrative expenses are the actual and necessary costs of preserving the estate.[26] To qualify as an "actual and necessary" cost under § 503(b)(1)(A), the claim against the estate must have arisen post-petition and as a result of actions taken by the trustee or debtor in possession for the benefit of the estate.[27] Because the purpose of administrative expenses is to permit the

---

[21] *In re Berryman Prods., Inc.*, 159 F.3d 941, 943 (5th Cir. 1998) ("Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed *de novo*.").
[22] *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1958)).
[23] *Anderson*, 470 U.S. at 573–75; *see also In re Webb*, 954 F.2d 1102, 1106 (5th Cir. 1992) ("Bankruptcy Rule 8013 specifically counsels the district court to give 'due regard...to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.'").
[24] *Miller v. Fenton*, 474 U.S. 104, 114 (1985).
[25] *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001) (citing 11 U.S.C. § 507(a)(1)).
[26] *Id.*; 11 U.S.C. § 503(b)(1)(A).
[27] *In re Jack/Wade Drilling, Inc.*, 258 F.3d at 387.

debtor's business to operate for the benefit of its pre-petition creditors, § 503(b) is narrowly construed, and its priority is confined to expenses that genuinely preserve the estate.[28]

The Supreme Court has created an exception when a third party is damaged by the wrongful conduct of the receiver. In *Reading Company v. Brown*, the Court found "it would be unfair to force that party to share equally with those creditors for whose benefit the estate was being operated."[29] Courts strictly construe this exception,[30] maintaining the general presumption that all "creditors are equally innocent victims in … bankruptcy."[31]

The question before the Court, therefore, is not whether Gautier deserves to get paid, but whether Gautier is permitted to be paid at the expense of Harper's existing creditors.[32]

## I.    The bankruptcy court applied the correct legal standard.

Gautier presents five issues, which raise two central questions. Issues One through Four each contend, in various formulations, that the bankruptcy court applied an incorrect legal standard in contravention of *Reading* and § 503(b): whether by (1) requiring proof of an intentional tort (Issue One), (2) failing to analyze the

---

[28] *Id.* (citing *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991)); *see also In re Federated Dept. Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir. 2001) ("Claims for administrative expenses under §503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants.").

[29] *In re Jack/Wade Drilling, Inc.*, 258 F.3d at 388 (citing *Reading*, 391 U.S. 471, 478 (1968)); *see also Matter of H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998) ("In [*Reading*], the Court provided an expansive interpretation of what is an 'actual, necessary cost' entitled to priority, holding that damages in negligence to a third party arising out of the receiver's administration of the estate give rise to an 'actual and necessary cost.'").

[30] *In re Jack/Wade Drilling, Inc.*, 258 F. 3d at 391.

[31] *Id.* at 389.

[32] *See id.*

wrongful nature of the conduct (Issue Two), (3) treating damages as dispositive (Issue Three), or (4) imposing an improper burden of proof (Issue Four).[33] Because each issue turns on the same premise—that the court failed to apply the correct legal framework—they are addressed together. Issue Five raises a factual question: whether the bankruptcy court clearly erred in finding that Gautier failed to establish post-petition injury. To the extent Issues Three and Four also challenge the sufficiency of the court's factual findings, that challenge is subsumed within the analysis of Issue Five.

Gautier's first four issues rest on a single premise: that the bankruptcy court never determined whether the debtor's post-petition conduct qualified for administrative priority under *Reading*, and instead demanded proof akin to that of an intentional tort and fully developed damages before reaching that threshold question. However, the bankruptcy court identified *Reading* as the framework in analyzing the claim, held it applicable to this Chapter 13 case, articulated the test that governs the exception, and resolved the case in accordance with that test.[34]

## A.   The court identified and applied the *Reading* framework.

After the parties presented evidenced, the bankruptcy court distinguished the two vehicles before it: a proof of claim, which is the mechanism for compensating pre-petition claims,[35] and an application for administrative expenses, which addresses

---

[33] Rec. Doc. 9 at 1-2.

[34] Transcript of Hearing at 75:17-22, 76:17-26.

[35] *Id.* at 74:9-17; *see also In re Krisu Hosp., LLC*, No. 19-20347, 2021 WL 1186483, at *4 (Bankr. N.D. Tex. Mar. 26, 2021) ("To be an administrative claim, the transaction must have occurred post-petition.") (citing cases from multiple circuit courts).

post-petition conduct.[36] Recognizing that Gautier's basis for recovery was post-petition freezing of her accounts, the court properly turned to § 503(b) and the *Reading* exception, which it identified as the controlling authority.[37] The court expressly acknowledged that this was "not the traditional use of 503(b)," *i.e.*, a voluntary post-petition transaction benefitting the estate, but rather a claim potentially falling within *Reading*'s exception, under which a non-debtor third party may obtain administrative priority for harm caused by the post-petition negligence or wrongful conduct of a trustee, receiver, or debtor in possession.[38]

Far from ignoring the exception, the court resolved a threshold question of its scope in Gautier's favor.[39] Harper argued that *Reading* has no application in Chapter 13.[40] The court rejected that argument, reasoning that a Chapter 13 debtor is a debtor in possession who controls and operates estate property, and holding—on the authority of *In re Steenes*—that the *Reading* exception may apply in Chapter 13.[41]

The bankruptcy court then correctly applied the *Reading* exception, examining (1) the wrongful nature of the trustee's or debtor in possession's act, and (2) whether the act was committed in the course of operating the debtor's business.[42] The bankruptcy court found the second element satisfied: the account freezes occurred post-petition, the debtor was a debtor in possession, and the conduct arose from his

---

[36] Transcript of Hearing at 74:20-23.

[37] *See id.* at 75:13-14.

[38] *Id.* at 75:16-19.

[39] *Id.* at 75:20-23.

[40] *Id.* ("So to address Mr. DeTrinis' first argument that, you know, 503(b) in this particular Reading case doesn't apply to Chapter 13, that's not true.").

[41] *Id.* at 76:2-5; *see In re Steenes*, 942 F.3d 834, 836 (7th Cir. 2019).

[42] Transcript of Hearing at 76:17-23.

operation of the estate.[43] The court then reached the first element—wrongfulness— and denied relief because the record contained no evidence that the debtor's act was wrongful.[44]

Contrary to Gautier's contention, the bankruptcy court did not require proof akin to an intentional tort. The court applied the wrongful-nature prong, and it recognized—consistent with *Reading*—that the exception reaches *negligent* post- petition conduct, not merely intentional wrongdoing.[45] And, again contrary to Gautier's contention, the bankruptcy court analyzed whether the conduct was wrongful and, in fact, ground its decision in the wrongfulness analysis.[46] The court examined the account freezes and found they were accomplished by a temporary restraining order that "was (1) temporary and (b) lawful"[47] when entered, on counsel's motion, with no evidence it was procured "due to fraud on the court or anything else."[48] The court directly analyzed wrongfulness and resolved the issue against Gautier based on the evidence.

This analysis further shows that the bankruptcy court did not collapse the priority classification into a damages inquiry or treat the sufficiency of damages proof as dispositive. The court observed that, had it been able to award anything, the proof would have supported at most a nominal award "in the range of about $500" for

---

[43] *Id.* at 76:23-35.
[44] *Id.* at 82:14-15.
[45] Transcript of Hearing at 76:7-11, 76:23-35 ("The *Reading* exception is an exception to the requirement that there be an actual benefit to the estate before a claim can be accorded administrative priority when *torts* are committed by the trustee or the debtor in possession during the course of a bankruptcy proceeding.") (emphasis added).
[46] *Id.* at 82:14-15.
[47] *Id.* at 82:1.
[48] *Id.* at 81:25.

embarrassment and inconvenience—and then denied relief not on that basis but on the failure of the wrongfulness requirement.[49] Far from treating damages as a threshold, the court reached the damages question only hypothetically and decided the case on a separate ground.[50]

At no point did the bankruptcy court impose a heightened burden by requiring proof of fully developed damages and causation as a precondition to priority, as Gautier contends. The burden the court applied was the settled one: the party seeking administrative priority bears the burden of establishing entitlement to it, and § 503(b) is strictly construed against the claimant.[51] Requiring Gautier to come forward with evidence of wrongful conduct—the operative element of the *Reading* exception she invoked—is not a heightened burden; *it is the burden.*

In sum, the bankruptcy court applied the framework Gautier contends it disregarded, resolved the exception's applicability in her favor, and denied relief because the evidence did not support a finding of wrongfulness.[52]

---

[49] *Id.* at 81:14-18.
[50] *Id.* at 81:19-25.
[51] *In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 442 (5th Cir. 2019); *see also In re Jack/Wade Drilling, Inc.*, 258 F. 3d at 391 ("We recognize that we have strictly construed the *Reading* exception.").
[52] *See generally* Transcript of Hearing at 75, 82.

**II.    The bankruptcy court's finding that the debtor's conduct was not wrongful is not clearly erroneous.**

What remains of Gautier's first four issues is a disagreement with the court's application of the correct standard to the record—a challenge governed by the deferential clear error standard of review.[53] The conduct on which Gautier's claim rested was the freezing of her accounts, through a temporary restraining order that the court found, "at the time it was entered … was (1) temporary and (b) lawful."[54] A state trial court issued the order on the debtor's counsel's motion, and Gautier offered no evidence that it was "entered into due to fraud on the court or anything else."[55]

Gautier bore the burden of proving wrongfulness, and she came forward with no evidence that the restraint was unlawful, procedurally improper, or procured in bad faith. The finding that the movant produced no evidence on a required element is not clearly erroneous, because Gautier identifies no evidence from which to infer a mistake.

Because the wrongfulness finding is dispositive of the *Reading* exception and free of clear error, the denial of administrative priority is affirmed.

**III.    The bankruptcy court did not clearly err in finding that Gautier failed to establish post-petition injury.**

As Gautier's fifth issue, she contends the bankruptcy court clearly erred in finding that she failed to establish post-petition injury. This challenge is governed by clear-error review.[56] To the extent the injury and causation determinations are

---

[53] *Anderson*, 470 U.S. at 573-74.
[54] Transcript of Hearing at 82:1.
[55] *Id.* at 81:25.
[56] *In re Berryman Prods., Inc.*, 159 F.3d at 943.

characterized as mixed questions of law and fact, the standard of review still reflects which "judicial actor is better positioned"[57] to decide them, and questions of this character—the application of a settled standard to an evidentiary record—sit at the factual, deferential end of the scale.[58] The determinations here rest heavily on the bankruptcy court's assessment of the credibility and weight of the testimony of Gautier and her treating physician.[59] Such findings command *Anderson*'s greatest deference: where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly erroneous.[60]

*The court permissibly discounted the physician's testimony.* The bankruptcy court explained, in detail, why it could give little weight to the testimony of Gautier's treating physician. The testimony was "very targeted," the witness "couldn't recall" or "couldn't answer" material questions, and there were no supporting medical records.[61] The physician acknowledged treating Gautier for anxiety but could not address other conditions that might have contributed to her symptoms, and though she testified that she had prescribed medication, there was no evidence of whether or how often Gautier took it.[62] The court characterized the diagnosis as "situational anxiety" arising over a roughly six-week period.[63] On that record, this Court defers to the court's conclusion that it could not credit the physician's testimony as establishing

[57] *Miller*, 474 U.S. at 114.

[58] *See U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 395-96 (2018) (mixed questions are reviewed deferentially to the extent they are factual and case-specific).

[59] *See generally* Transcript of Hearing at 81-82.

[60] *Anderson*, 470 U.S. at 573-75.

[61] Transcript of Hearing at 77:7-17.

[62] *Id.* at 80:13-22.

[63] *Id.* at 80:22-23.

compensable, causally attributable injury.[64] A bankruptcy court is not required to accept even uncontradicted testimony,[65] and its assessment of the sufficiency and credibility of that testimony is reviewed with the utmost deference.[66]

*The court identified an independent cause of the alleged harm.* Gautier's theory was that the account freezes caused her anxiety.[67] But the record supplied an alternative cause the court was entitled to weigh: during the same period, Gautier's husband of thirty-six years passed away.[68] The court expressly identified this as a possible alternative source of her anxiety.[69]

*The court found that Gautier's own choices, not the freezes, produced her claimed economic loss.* Gautier sought, among other things, the tax penalty she incurred by withdrawing early from her retirement account.[70] The bankruptcy court found this loss self-inflicted: the freeze lasted about six weeks; Gautier had credit cards available to cover the recurring automatic payments—car, health, and life insurance—that were coming due; and rather than use them, she "chose herself to go and do a pretty radical thing" and withdraw from her retirement fund, incurring the penalty.[71] The court therefore declined to attribute that loss to the debtor's conduct.[72]

---

[64] *In re Duncan*, 562 F.3d 688, 694, 695 (5th Cir. 2009) (reviewing court gives "deference to the bankruptcy court's determinations of witness credibility").

[65] *E.E.O.C. v. G-K-G, Inc.,* 39 F.3d 740, 746 (7th Cir. 1994) (citing *Masciale v. United States*, 356 U.S. 386, 388 (1958) and *United States v. Mora*, 994 F.2d 1129, 1137 (5th Cir. 1993)).

[66] *Anderson*, 470 U.S. at 575 ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

[67] Rec. Doc. 9 at 8.

[68] Transcript of Hearing at 78:25-79:3.

[69] *Id.*

[70] *Id.* at 81:6-7.

[71] *Id.* at 81:11-12.

[72] *Id.*

*The court found no proof of the remaining categories of harm, and no quantum.* The court received no evidence on the alleged damage to Gautier's credit score or credit rating.[73] As to emotional distress, the evidence established, at most, "embarrassment," "inconvenience," and "discomfort"[74] over a six-week period. Gautier's own testimony was that she got "everything back on track" within that window, with no medical records of ongoing treatment and no evidence of any insurance policy actually cancelled or benefit actually lost.[75] The court had, in its words, "no specific evidence on quantum of damages, just general descriptions."[76]

Gautier misapprehends the factfinder's role in arguing that because the evidence was "uncontroverted," discounting it constituted clear error.[77] That evidence went uncontradicted does not mean it was compelling. The bankruptcy court remained free to find it insufficient, incomplete, or not credible, and it explained precisely why it did. What Gautier characterizes as the court's disregard of her evidence was in fact the court's *weighing* of it. This is a core function of a factfinder, and the findings are not clearly erroneous.

---

[73] *Id.* at 80:3-4.
[74] *Id.* at 81:14-18.
[75] *Id.* at 78:3-4, 80:9-10.
[76] *Id.* at 79:11-12.
[77] Rec. Doc. 9 at 20 ("Here, the Creditor's testimony and supporting documentation were consistent, corroborated, and unrebutted. Discounting that evidence to the point of denying relief constitutes clear error.").

**IV.    The bankruptcy court properly sustained the objection to Gautier's proof of claim.**

The bankruptcy court also sustained Harper's objection to Gautier's proof of claim.[78] While a proof of claim is the vehicle for compensating *pre-petition* claims,[79] Gautier's asserted basis for recovery was the post-petition freezing of her accounts.[80] Because the conduct on which her claim rests occurred after the petition date, the proof of claim was not the proper vehicle for recovery, and the objection was properly sustained.

## CONCLUSION

The bankruptcy court applied the correct legal framework and committed no clear error. It identified *Reading* as the governing exception, held it applicable in this Chapter 13 case, and analyzed the claim under the governing two-element test, resolving the exception's scope in Gautier's favor before reaching the merits. The record does not support Gautier's contention that the court required proof of an intentional tort, declined to consider wrongfulness, or treated damages as dispositive. The court found no evidence that the debtor's post-petition conduct was wrongful, the account restraints having been effected through a temporary restraining order that was lawful when entered. The court further found that Gautier failed to establish compensable injury or its causation: a determination resting on its assessment of the credibility and weight of the evidence. The court likewise properly sustained the objection to Gautier's proof of claim, which is not a vehicle for post-petition claims.

---

[78] Transcript of Hearing at 74:9-11.
[79] *Id.*
[80] *Id.* at 74:21-22.

Accordingly, **IT IS ORDERED** that the order of the United States Bankruptcy Court for the Eastern District of Louisiana sustaining the debtor's objection to Proof of Claim No. 11 and denying Gautier's application for administrative priority claim is **AFFIRMED.**

New Orleans, Louisiana, this 20th day of July, 2026.

_____
ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE